Ms. Largent. Good morning, Your Honor. Please, the Court. I'm Megan Largent with the law firm Lewis Rice, and I'm here today on behalf of all 22 appellants in this case. These appellants all own property in Miami, Florida, just south of the Miami airport. 13 of these landowners own lots in a neighborhood called Princess Park Manor. Nine own lots in a neighborhood directly south called Zena Gardens. All of these owners' lots back up to the abandoned Florida East Coast Railway right-of-way. The east side of the easement runs along the west side of their property. None of these owners own on the west side of the Florida East Coast right-of-way. The portion of the right-of-way was created by a series of condemnation orders against then owners of the property at the time the railroad was created. That fact is not disputed in the court below on summary judgment. The government agreed that the railroad held only an easement for railroad purposes in these portions, in this portion of the Florida East Coast Railroad right-of-way. Let me ask you to clarify some, what I understand are some facts, OK? Am I correct that the Princess Park Manor plat provided only that the railway right-of-way, and not the land underlying the right-of-way, was to be excluded from the subdivision? So the Princess Park Manor plat stated in the legal description in one place that it was less the Florida East Coast Railway right-of-way, and in another section of Princess Park, the southern block, that it was east of the Florida East Coast Railway right-of-way. Florida law directly on point states that that language in the legal description when referencing an easement does not operate to exclude the underlying fee from the land being conveyed. Rather, in Dean versus MOD, the Florida court said that language indicates that that land is subject to a superior right of an easement holder. And that is absolutely true here. The Florida East Coast Railroad right-of-way. Hang on, I have another question for you. And that's about Zena Gardens. And I want to clarify these. The Zena Gardens plat accepted a strip of land from the subdivision, but it seems to me that explicitly provided that the strip of land it accepted is the right-of-way. Absolutely, Your Honor. I believe it said exactly that it is accepting a strip of land off the westerly side, which is the right-of-way of the Florida East Coast Railroad. Again, the Dean versus MOD case. The Florida court had the language less and accept in front of it, and found that insufficient to show that the grantor had withheld the underlying fee. Rather, that language, again, put the grantee on notice that there were superior rights in that land. I would also note to the court that both plats, which are in the record, maintain the exact dimensions of the condemnation orders dating back to the original owners, Russo, Johnson, Piles, and Owens, who are listed in the court below. The court of federal claims held that this except, east of, unless the railroad right-of-way operated two ways, to both or either withhold conveyance of the underlying fee estate, or to explicitly reserve the reversionary interest in the grantor. Can I say this? Correct the following view of what has happened in this case. Initially, pre-reconsideration, what the CFC held, as I understand it, and what the government argued, was that the 1947 plat on the Zena side and the November 1949 plat on the Princess side did not grant, by reserving or otherwise, the under-the-corridor estate. On reconsideration, as a result partly of evidence you submitted, the government argued, and this is now its overwhelmingly prior primary argument, that it's something quite different, which is not what happened in the 1947 plat and the November 1949 plat, but rather that the Merwitzers and Mosses at that time simply never owned the land under the railway corridor. Am I understanding correctly that essentially the ground on which the government now says there is no takings has shifted? They do have like three pages at the end of their brief making the argument that the CFC adopted in the opening opinion. Have I misunderstood what has happened? No, Your Honor, I think you correctly understand what the government's arguing and what the CFC held. We did introduce chains of title on reconsideration. The Court of Federal Claims explicitly said, I'm not going to consider those chains of title in my reconsideration opinion. And then it did, and found without any support, and again, for the key holdings that the Court of Federal Claims bases both its opinion on summary judgment and its motion for reconsideration opinion on, there is no Florida case law cited supporting those holdings, those fundamental holdings, that this fee property was not owned by the Mosses and Merwitzers. Well, we don't know that. I'm going to give the government a chance to cite some. And Your Honor, I would note that there is none cited in the brief. The parties here cite the same cases. We rely on. But just so I understand your theory of the case, if it is, just accept the hypothetical that the Merwitzers and the Mosses were never conveyed the corridor amount of property, then do you still have the theory for how you can prevail? Well, Your Honor, we wouldn't concede they were never conveyed the corridor. And in fact, Florida law presumes that they in fact did own it absent a rebuttal of clear evidence of clear intent otherwise. Let's assume for the moment that the court reads the deeds of granting the properties to the Merwitzers and the Mosses in the same way the claims court appeared to, which is to say that there was a conveyance of property to each of those parties, but none of the land underneath the railroad corridor was part of the conveyance in those deeds. Is there still a theory that you have for why you would believe that your clients are entitled to the centerline presumption now to halfway through the corridor? Accepting the court's hypothetical that it is proven that there was no interest in the fee estate underlying the railroad corridor, then no, because under the Emerald Equities case in Florida, the entire point of the centerline presumption is to get back that this was originally carved out of someone's property. We're going to assume it was evenly carved out of the owners on either side absent proof to the contrary. So then if we were to conclude that it's your burden to establish that somebody owned that title, whether it was the Merwitzers and Mosses or the people that granted or conveyed those properties to the Merwitzers and Mosses, and it's your burden to establish at some point in time to change the title, there were owners that owned not only these particular flats but all the way out into halfway into the corridor, what would you point to that could show us that in fact the Merwitzers and Mosses or the previous owners in fact owned the land out to the centerline of the corridor? Your Honor, if you were to conclude that, contrary to Florida law, we did in fact have a burden to prove all the way back to the original owner, the chain of title on reconsideration does in fact for Zena Gardens go back to the Russos, the original owner. That's how we would prove that we have an interest in that land because in fact their chain of title does relate back to the original owner. We don't have a chain of title on all of these properties. If this court were to conclude that we had that burden and didn't accept that under Florida law, which does apply here, that we do not have that burden, that we have met that burden by the presumption because we enjoy a presumption under Florida law, we would ask for the opportunity to go and do the title work to trace them all the way back to the beginning. I think that contravenes Jacksonville. But under Florida law, you can't have a race know us, something that's not owned by anyone. Exactly. Your Honor, that's the Strips and Gores Doctrine, which this court did previously certify a question to the Florida Supreme Court. Different facts in that case, but the issue of the Strips and Gore Doctrine, of course the Strips and Gore Doctrine is the presumption we don't want to have uneconomic remnants of property. But what if it's just not clear on this record who actually is the owner of the property that makes up the railroad corridor? Maybe it's just on this record, it's not clear whether it's the railroad company. I know there's this 1937 deed lurking in the record, but let's say that that's unreadable. But there's also likewise nothing that ever suggests that at least half of that railroad corridor was ever connected to these other properties that were once upon a time owned by the Merowitzers and Mosses. So yes, even though there's a strong principle in not reading certain lands to just be not owned by anybody, maybe just for purposes of this case, right now we don't have anything that can convince us one way or another that it's unowned or it's owned by a particular party. Then what do we do? Well, Your Honor, I do believe that if that is the case, then absolutely the court's summary judgment opinion cannot stand because what the court's summary judgment opinion found was that the government had affirmatively rebutted the presumption that our owners were entitled to the presumption that they own the land underneath the condemned portion of the right-of-way. Thereby saying that there's no way our owners could own it and ending their Fifth Amendment claims for compensation. If the court believes it's unclear and that we don't enjoy that presumption, then remand would be possible to further develop the factual record. We could pull chains of title for everyone. Again, though, I would point to Florida courts. Explicitly in Jacksonville said, the very point of the presumption is so that in every case we don't have to derain or prove title back to the original owner. We certainly could do that, though. Your Honors, I would point to the fact that, again, in the Court of Federal Claims opinion, on the key holdings that it bases its opinion on, there is not one single Florida case cited to support the holding that the language except less than and east of the Florida East Coast Railroad right-of-way would operate either to reserve any interest in the grantor or to indicate that that fee estate was not conveyed in the grant. And in fact- I don't know why you're complaining. There are a lot of other citations. There are several citations. To be sure, the court cites plenty of law. Except there. But there is none in the key holdings of the case. I would also point to the Bischoff v. Walker case, Your Honor, and that simply, Your Honors, that simply says in a case that it says east of a canal that the centerline presumption applies and that that language east of indicates that the land goes to the centerline, not just at the edge of the right-of-way. I've gone into my rebuttal. Do any of the documents in this case either the plat documents or any of the chain-of-title documents use language that refer to, say, east of the, I guess the eastern border of the corridor, something that refers to the one-dimensional edge of the corridor? No, in fact, the portion in Princess Park that says that just says east of the Florida East Coast right-of-way. Your Honor, I've gone into my rebuttal time and I'll reserve the remainder. You may. Thank you. Let's hear from the United States. Good morning, Governor Parl, on behalf of the United States, and may it please the Court. The first and dispositive question here is whether the Merwitzers or the Mosses owned any portion of the rail corridor. Well, before you get going, I want to give you the opportunity to give us those Florida case sites. On page one of the gray brief, the landowners say, if the government's arguments were correct, one would expect it to cite at least one Florida case in which the owners, and by the way, the district or the court below, in which the owners of parcels and budding and abandoned right-of-way were denied ownership of the underlying land because somewhere in their chain of title, there were documents or records describing earlier conveyances made, quote, subject to less or accepting, close quote, the right-of-way. But it does not because no such case exists. So can the government give us such a case? Well, and then the plaintiffs proceed to cite a list of cases in which ownership of the fee of the railroad wasn't disputed. So the question is, is there a case under Florida law that says one way or the other what a subdivision owner has to say in his plat to indicate that he doesn't own a particular strip of land? And the answer is no. So common sense principles apply. Plain language applies. Let's take the Zena Garden Plats. And let's keep in mind, too, it's important to keep in mind, in summary judgment, the only evidence that the court had about the extent of the Merwitzers' and Moss's land ownership were the plats that the government introduced. The plaintiffs didn't produce any evidence on that critical question. And the Zena Garden Plat is clear, as Your Honor noted. It says that the Merwitzers owned a very specific parcel of land excepting therefrom a strip of land on which the right-of-way is located. Is that the one that says strip of land? That's the one. Yes, sorry, Your Honor. Which is the right-of-way? Yes, but they- How come that against all, I mean, I've read against a whole bunch of, whole bunch of Florida cases, and my pretty strong impression, correct me if I'm wrong, is that that's the kind of language that would be pretty sensibly interpreted to refer to that interest which the railroad had, which was indisputably only an easement? I would say that's not accurate, Your Honor, because let's take the case of Dean-Butte-Mod Properties. The language there, when it was a conveyance, not a description of ownership, the conveyance said less than except an easement. This doesn't say less than except an easement. Oh, so there are, of course, there are clearer ways to say it, but the question is what do you do with a language that says except a strip of land, which is a right-of-way, and it's undisputed what the limited interest the railroad had, which was not an estate interest in the ground? Well, it's only undisputed as of 1924. We stipulated that the 19... I'm sorry, but see, now it seems to me we're shifting grounds again. I thought we were just talking about the ground that the CFC relied on in its initial opinion, which is what does the plat say about what's being given? And then there's now, and you get to that argument in the last few pages of your brief. You now have the argument that I think was developed only on reconsideration, which is by the time the plat was written, the plats, 47 and November of 49, these people didn't own this at all. How do you make that argument while simultaneously saying that the material submitted on reconsideration should not be considered? Because the plat tells us what the Brewers and the Mosses owned at the time they platted the subdivisions, and both the narrative in the plat and the other markings in the plat indicate that they did not own the rail corridor. That is why they didn't include it in the plat. Everyone here agrees that the platted subdivisions don't include the rail corridor. Why? Because they didn't own it. The plats include a reservation and dedication as though. Everyone agrees. Everyone agrees that the rail corridor was not a part of the plat. The easement. The rail corridor. The rail corridor. The judge's reconsideration order at 61 and 62, citing the plaintiff's arguments, they submitted multiple declarations to make the point that the rail corridor is not part of the platted lands. Why? Because the grantors didn't own it and were in no position to plat it. And that's confirmed by the boundary of the subdivision, which is unequivocally at the edge of the rail corridor by the narrative description, which excludes the strip of land in the rail corridor. And I think, Your Honor, the language difference is critical. I'm gonna ask your opposing counsel, because they're someone too, if they agree with your proposition that there is no interest in real property in that land underlying the rail corridor. Well, I would direct the court to, regardless of what's said, to page 61 and 62 of the reconsideration order, quoting from the declarations that the plaintiff submitted, where the declarants say, of course this corridor is not part of the platted lands. So that's an undisputed proposition. Does the Court of Federal Claims' original opinion say that the Merwitzers and Mosses did not own the land under the railroad corridor at the time of their platting? Your Honor, the court briefly noted that the plaintiffs had simply assumed that they owned it and presented no supporting evidence, and then proceeded to address the second and separate question of whether the corridor was included in the conveyance. So Your Honor is correct. The court did not hold explicitly, other than that notation I just said, did not base her holding on the lack of ownership in the first instance. But we made that point in our initial summary judgment brief, albeit briefly, and you can infirm on any basis that's supported by the record, and no one has argued that we forfeited that argument. So in fact, the forfeiture argument is forfeited. So that issue is precisely before the court, and it's dispositive. And it's dispositive based on the evidence that was before the court at summary judgment, which is the two plats. The narrative in the Xena Gardens, the narrative excluding the strip of land, the plain meaning of that. I'm sorry, just so that this stuff is all clearer in your head than mine. When you say excluding the strip of land, the longer phrase is excluding the strip of land, which is the right-of-way? Correct. But what we're saying is that. As you can tell, that seems pretty significant. That's troubling you, but I would say it's even more significant that they specified the strip of land. Every word has to be given meaning. They didn't just say, and here's a good counterpoint. How would you know? How would one know unless it said, this piece of land has the right-of-way on it? How would one know what land they were referring to? Yeah. Right, so that inclusion of the right-of-way is to clarify that the strip of land that's excluded from our ownership. No, no, you're turning it on its head. That's the whole point of reversionary interest in when one obtains an easement. Your whole argument is that A grants an easement to a railroad on property they own, and then they convey the property, but let's say they don't say anything about that easement. That's one situation. Secondarily, they say, hey, we're conveying you this property, but we don't want to be sued, so we need to tell you that there's an easement over this property. That seems to me to be where they're going with that language. But in any case, supposing they do nothing with that, they just say, we're conveying this piece of land, less the easement property. But by the way, as a matter of law, you know and we know that if the easement goes away, you have a reversionary interest. Well, Your Honor, but they didn't say that, and I would say that Dean. The law is the law. Right, but there's nothing in Florida law that says if I describe my ownership as excluding a strip of land, it means that I own the strip of land. What else could they have possibly said to indicate that they didn't own the strip of land that was excluded from the description of the land that they own? And it's important to contrast that with Dean. But you know what they could have said. For one thing, they could have skipped the which is the right of way. For another thing, they could have done meets and bounds language. For another thing, they could have said what the eastern border of the corridor is the western border of the land that we are conveying. My understanding from the treatises and the cases that I've looked at is that how you describe things makes a big difference. And this is essentially a monument case where the boundary is a two-dimensional figure referred to as such for which there's a default rule about what you do when you need to translate into a one-dimensional boundary, a two-dimensional monument boundary. Well, I would point the court to the Princess Park Platte as a counterpoint because there, when the landowners wanted to indicate that they owned land subject to an easement, they did that. On the northern boundary of that platte is a 37-foot easement for drainage purposes. And the Mozes made that clear on the platte. But they didn't use the same language to describe the rail corridor. They said three different ways in the narrative that they didn't own the rail corridor, that they owned the land east of the rail corridor. And they had a boundary line, very straight, alongside that says east right of way of the rail line, which was the boundary of the subdivision. And as I said before, everyone agrees that the rail corridor, you'll find out, I guess, but if you look at what they filed on reconsideration, everyone agrees that the rail corridor was not part of the platte. Can I ask you a question about what, you have a description, which I think, of the Florida cases, which I think says that the, the two cases, right, Smith, you say the Smith v. Horn and the Jacksonville case have two different rules. And I don't really understand that. I guess I would have thought that they both articulate exactly the same rule, which is that when you have a land grant with a boundary stated in terms of a waterway or a road, and let's assume for current purposes it includes a railroad corridor, then there's a presumption that can be overcome about where the one-dimensional boundary is. And I don't understand why you think there's any daylight between those two cases. Well, there's a really big difference, actually, Your Honor. The first is not the Jacksonville expression, it's simply a presumption of ownership. You're presumed to own the middle of a roadway, simply by virtue of owning an adjacent lot. The second- If the boundary is one of these natural things. Correct. Yeah, okay. The second version in Smith, in Southern Railway, Covey Brown, in Rogers, and other cases, it's a rule for construing a conveyance. It's not a presumption of ownership. It's a rule for reading a deed. And it only applies if the grantor who executed the deed actually had a property interest in the rail corridor, in the roadway, in the first place. Right, but I don't see why Jacksonville is any different from that. Because that's a presumption of ownership, and the second version is a rule for construing a conveyance that only applies if it's first established that the grantor had something to convey. To be established. Smith does not say if it's established. Smith doesn't. It just says, obviously, you can't give away what you don't own. So the rule applies only if you don't own it. It doesn't say anything about who has the burden of establishing one way or the other. And I would have thought that in a deed like the kind of thing that's in Smith, if you want to know who owns it, you then trace back in history to the transactions that either did or did not give it to the later grantor. But in this situation, those documents themselves are subject to the very same rule, because they have boundaries, monument boundaries. So I just don't see what the daylight is between these two things. Well, the Smith version makes clear, it sets off by a comma, that the presumption is one for construing a conveyance that applies if the grantor owns that car. It's not part of the presumption. So then it should be, just as the Colorado Supreme Court said in Asmussen, that it's the plaintiff's burden. Since it's not part of the presumption, it's the plaintiff's burden. But the plaintiff says, how do we know they own these things? If somebody is questioning it, go back to where the ownership came from, and those are subject to the very same rule. Correct. Which then puts you, the challenger, in the position of having to overcome the presumption as to those transfers. That's correct, but you first have to produce the chains of title dating back to the original grantor of the Eastman. Are you wandering into the first year law student's netherworld of future interest? I don't think so, Your Honor. Is the railroad a use of fraud? Excuse me? Yeah, I don't. I do want to make one more point on the second issue, separate from the ownership issue, whether the Merwits and Mosses intended to convey. We pointed out that they did not intend to convey precisely because they excluded the rail corridor from the plat. So it makes no sense to say that someone who buys a lot by reference to the plat, you know, obtains a property interest in a rail corridor that's not even in the plat. That defeats the whole purpose of demarcating the boundaries of the plat. And lastly, Florida Supreme Court v. Brown includes a note at the end, setting out the parameters of the centerline rule. That's the first case that I'm aware of that Florida cited that, and I'll finish this up real quick. Okay, Florida, which? Florida Supreme, Florida Southern Railway Code v. Brown. And it says, when the land is described as being bounded by the sideline of the street, it is so bounded, and not by the centerline. That's exactly what we have on the plats here. The plats are bounded by the sideline of the rail corridor, not by the centerline. So the centerline presumption is abutted. And what's our further questions? Look it up later, Mr. McArdle. It's called USAFRUCT. Thank you. State and land. Apologize, I didn't know the answer to that question. Your honors, I would like to first address the government's assertion that everyone here agrees that the railroad was not part of the plat. The appellants in no way agree that the railroad was not part of the plat. First and most obvious, the railroad is on the plat. The railroad itself is pictured on the plat, and actually very specific dimensions, including those exact dimensions of the condemnation orders, are on the plat. Mr. McArdle, I think, said that briefly, at least, in the government's summary judgment motion, the government did assert that the Merwitzers and Mosses in 47 and November 49 did not own any part of the rail corridor. First, is that true? And if so, what did you say in response to that? Not what did you say, but did you say? Your honors, I would have to go back and look at the briefing, but we always maintain that they owned it because they were the predecessors, or the successors in interest, to the original condemnees in that case. The language I believe the government's always agreed on is this accept less than, and east of the right of way, and they've always asserted that that took the, without any support, that that removed the underlying fee from the conveyance. And your view is that, unlike, is to disagree with the very last thing I think Mr. McArdle said, which is that this is a case in which a thing that is being identified in the relevant documents is a line rather than a two-dimensional object like the rail. Yeah, the eastern boundary of, or something like that. I disagree with that, your honor. I think the language is clear, that they're talking about a right of way here, an actual right of passage for the railroad over the land. And the last thing I'd like to address is the government contrasts this with the language used to accept the canal, or to make it subject to the canal in Princess Park. There's a very good explanation why you would use different language for a drainage easement than a railroad easement. The US Supreme Court has been clear in Western Telegraph versus Pennsylvania Railroad, railroad easements are exclusive. The public, unlike the streets, the alleys, the canal, the drainage. You're out of time, counsel, so wrap it up. Your honor, the public, no one except the railroad can use the easement, which is very different from the other types of easements in these plots where the owner did have some use of those rights of way. Your honor, I would just, in conclusion, say that on this record, the government has not produced any evidence to rebut the clear presumption in Florida law that these owners own the land underneath those condemned portions of the right of way. And we ask that this court reverse the CFC's opinion and remand this for future proceedings to determine just compensation.  Thank you, counsel.